**In re OCEAN DOWNS RACING ASSOCIATION INC. and the Rosecroft Trotting & Pacing Association, Inc., Debtors.**

**Bankruptcy Nos. 91–5–0183–JS, 91–5–0184–JS.**

United States Bankruptcy Court,
D. Maryland.

Oct. 14, 1993.

Jay A. Shulman, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for James J. Murphy, Chapter 11 Trustee.

---

**2.** The Debtor's residence was not leased to any third party at the date the Mortgage was signed or at any time thereafter.

Robert H. Rosenbaum, Riverdale, MD, for Prince George's County.

Ira Wolpert, Foley & Lardner, Washington, DC, for debtors.

*MEMORANDUM OPINION SUSTAINING TRUSTEE'S OBJECTION TO CLAIM OF PRINCE GEORGE'S COUNTY FOR PAYMENT OF TAX PENALTIES*

JAMES F. SCHNEIDER, Bankruptcy Judge.

The question presented by the Chapter 11 trustee's objection to the claim of a county for a prepetition tax penalty is whether the tax penalty assessed against the corporate debtor was discharged pursuant to a provision in the confirmed Chapter 11 plan of reorganization which provided for the discharge of all penalties. For the reasons stated, the Court holds that the tax penalty was discharged and the trustee's objection will therefore be sustained.

*FINDINGS OF FACT*

1. On January 10, 1991, Ocean Downs Racing Association, Inc. and The Rosecroft Trotting & Pacing Association, Inc., filed voluntary Chapter 11 bankruptcy petitions in this Court. On the same day, the Court signed a stipulated order appointing James J. Murphy Chapter 11 trustee in both cases. The cases are jointly administered.

2. The debtors are Maryland corporations which owned and operated two harness racing tracks. Rosecroft owned and operated Rosecroft Raceway, which is located in southern Prince George's County, Maryland. Ocean Downs owned and operated Delmarva Downs, which is located in Worcester County, Maryland, approximately ten miles west of Ocean City, Maryland. Amended Joint Disclosure Statement, Section III.A. [P. 111].

3. On February 25, 1991, Prince George's County, Maryland, filed Claims 38 and 39 in the Rosecroft case for real and personal property taxes due as of July 1, 1990 in the respective amounts of $224,942.13 and $23,462.01, plus interest and penalties, to the extent the claims were secured. Interest and penalties were alleged to be chargeable as of October 1, 1990. On September 26,

1991, the county filed Claims 38A and 39A for real and personal property taxes due postpetition as of July 1, 1991 in the respective amounts of $453,275.57 and $44,595.14, augmented by interest and penalties.

4. On August 6, 1991, the Chapter 11 trustee filed an amended joint disclosure statement and a joint amended plan of reorganization [PP. 111 and 112]. The plan provided that it would be substantially funded from the proceeds received from Colt Enterprises, Inc. pursuant to a stock purchase agreement in the amount of $18.2 million in cash. Plan, Section 4.1.

5. Both the plan and disclosure statement indicated that all penalties would be discharged under the plan. Section 10.5 of the plan provided:

No holder of any Allowed Claim or Allowed Interest is entitled to recovery of payment on account of any penalty, *all* of which *penalties are discharged without payment under this Plan.*

*Id.* [Emphasis supplied.]

6. After Prince George's County received notice of the plan and disclosure statement, it filed a "Limited Objection" on September 18, 1991. [P. 135]. The objection asserted that the county's tax claims were superior to the secured claim of First National Bank and should have priority over it. "Prince George's County does not object to the proposed sale but merely to the distribution of the proceeds of the sale of its security to another but junior creditor prior to the payment of its taxes." Limited Objection, paragraph 5.

7. The county withdrew its objection at the confirmation hearing held on October 2, 1991. On that occasion, the following colloquy occurred on the record between trustee's counsel, Lawrence D. Coppel, and Robert Rosenbaum, counsel to Prince George's County:

Mr. Coppel: The understanding is that the objection [of Prince George's County] is being withdrawn, that the trustee acknowledges that the county has reserved its right to claim the statutory penalty amount as part of its claim. Similarly, the county acknowledges that the trustee and any oth-

er party in interest reserve the right to object to the statutory penalty amount of the claim, and on that basis, the objection has been withdrawn.

Mr. Rosenbaum: That is correct, Your Honor.

8. The trustee's amended joint plan of reorganization was confirmed by order dated October 11, 1991 [P. 146]. No appeal was taken from the order of confirmation.

9. On February 26, 1992, the Chapter 11 trustee filed the instant objection [P. 221] to the claims of Prince George's County to the extent of $25,684.95, which represented a 1% per month penalty for unpaid taxes, which the trustee alleged was discharged by the terms of the confirmed Chapter 11 plan. The trustee is holding the amount of the penalty in escrow, claiming to have paid the major portion of the county's tax claims on the effective date of the plan.

*CONCLUSIONS OF LAW*

1. This case is governed by Section 1141 of the Bankruptcy Code, which provides:

§ 1141. Effect of confirmation.

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners of the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title,

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(d)(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

(d)(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under Chapter 7 of this title.

(d)(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

11 U.S.C. § 1141 (1993).

2. A corporation that is a debtor in Chapter 7 is not entitled to receive a discharge in bankruptcy. 11 U.S.C. § 727(a)(1) (1993).

3. However, a corporation that is a debtor in Chapter 11 is entitled to a discharge in bankruptcy if its confirmed plan does not provide for the liquidation of all or substantially all of the property of the estate and if the debtor continues to engage in business after its plan is consummated. 11 U.S.C. § 1141(d)(3) (1993).

4. The confirmed Chapter 11 plan in the instant case, which provided for the sale of

the stock of the two debtor corporations, was a plan of reorganization, not one of liquidation. The sale of the debtors' stock merely resulted in a change in the debtors' owners and not a liquidation of assets. The debtors' business of owning and operating racetracks continued post-confirmation without interruption under the identical corporate nomenclature as before. *See* T. Jackson, *Of Liquidation, Continuation and Delay: An Analysis of Bankruptcy Policy and Nonbankruptcy Rules,* 60 Am.Bankr.L.J. 399, 408 (1986).

■ 5. The foregoing analysis leads to the conclusion that the debtor corporations in the instant Chapter 11 were entitled to be discharged in bankruptcy upon the confirmation of the joint plan of reorganization.

6. The confirmed plan in this case specifically provided for the discharge of all penalties without payment of any kind required to be made by the debtors. The question arises whether this provision of the confirmed plan is binding on the county or whether it is void as violative of the absolute priority rule of Section 1129(b)(2)(C)(ii) (1993). The discharge of the county's tax penalties will result in the disputed funds in the escrow account of the trustee being distributed to the debtors' former equity security holder, rather than to the county, which is a member of a senior class of unsecured creditors. In other words, the plan discharged the county's tax penalty but the question now before the Court is whether the penalty portion of the county's claim was properly dischargeable.

7. Pursuant to Section 14–805 of the Tax–Property Article of the Maryland Code, the liability for an overdue tax on real property attaches as a first lien to the real property of a delinquent taxpayer in the amount of the tax due from the due date. Section 14–804 of the same article likewise provides that unpaid personal property taxes give rise to a lien on the delinquent taxpayer's real and personal property. Section 14–702 authorizes counties to set a tax penalty on overdue property taxes, and Section 14–701 says that the tax penalty is calculated on the total tax liability on property. Section 10–201 of the Prince George's County Code provides for a penalty of 1% per month for the delinquent payment of taxes on real and personal property. Despite the county's assertions to the contrary, it is clear that the disputed portion of the county's delinquent tax claim in the instant case, which represents a 12% per annum charge on the total taxes due, is a tax penalty instituted for the purpose of coercing payment of delinquent taxes.

8. Some courts have equitably subordinated tax penalty claims to claims of general, unsecured creditors in Chapter 11 cases, either by analogy to Section 726(a)(4), *In re Manchester Lakes Associates,* 117 B.R. 221 (Bankr.E.D.Va.1990), or pursuant to Section 510(c), *In re Burden,* 109 B.R. 107 (E.D.Pa. 1989). Section 726(a)(4) provides for the subordinated payment of claims based on fines, penalties, forfeitures, or damages, to the extent they do not represent compensation for actual pecuniary loss, after the payment of general, unsecured creditors. The rationale under either section "stems from the classification of both tax penalty and punitive damage claims as non-pecuniary losses originating from the debtor's wrongdoing. Under this rationale, the general unsecured creditors should not be penalized for such losses in view of the fact that tax penalties are to punish late-paying debtors, not the creditors." *In re Manchester Lakes Associates,* 117 B.R. at 225. *Manchester Lakes* was a Chapter 11 reorganization in which the confirmed plan was apparently silent as to the treatment of prepetition tax penalties. An objection was filed by the plan administrator to the tax penalty claim of a county and the court had to decide whether the penalty should be treated as a secured or unsecured claim, pursuant to Section 506(b) of the Bankruptcy Code. While a decision was pending, the Supreme Court decided the case of *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), which held that Section 506(b) entitled the United States to recover only postpetition interest on an oversecured, nonconsensual claim for unpaid prepetition withholding and social security taxes, there having been no agreement as to other reasonable fees, costs and charges recoverable by the claimant. Judge Bostetter decided in *Manchester Lakes* that a tax penalty claim of an oversecured tax creditor ought to be al-

lowed as a general, unsecured claim but subordinated to claims of other general, unsecured creditors. In the instant case, the terms of the confirmed Chapter 11 plan of reorganization in effect have subordinated the county's tax penalty claim to the claims of all other creditors.

 9. Prince George's County is an oversecured creditor holding a first lien on the real estate of Rosecroft. Except for its outstanding prepetition penalty claim, the county has been paid everything that it was authorized to be paid by *Ron Pair* and the terms of the confirmed Chapter 11 plan in this case. Prince George's County is not entitled to penalties as part of its secured claim. *See In re Parr Meadows Racing Ass'n,* 880 F.2d 1540 (2d Cir.1989). The claim for penalties arose by operation of law under the Maryland statute and not by agreement of the parties. Therefore, the Court must look to the plan to determine whether the county is entitled to recover penalties on its claim as a general, unsecured creditor.

10. The centerpiece of the confirmed plan of reorganization in the instant case was a stock purchase agreement. The plan provided that the sole equity security holder of the debtors, Mark Vogel Productions, Inc., would part with ownership of the debtor corporations by selling its stock for a price of $18.2 million, from which the debts of the corporations were to be paid 100%, except for penalties. Under the circumstances of this case, the discharge of the tax penalties by the plan did not amount to a violation of the absolute priority rule because the equity security holder did not retain any interest in the reorganized debtors and because the Court's liquidation analysis in granting confirmation to the plan indicated that the county's tax penalty, as a subordinated claim under Section 726, would not have been paid had this case proceeded as a liquidation under Chapter 7.

11. According to the terms of the confirmed plan, the tax penalty claim of Prince George's County was discharged. Whether the county objected to the plan or not is immaterial. Pursuant to Section 1141(a), Prince George's County, as well as the debtors, their equity security holder and all other creditors, are bound by the terms of the confirmed plan. The Court holds that the equity security holder of the debtor corporations in the instant case, subject to a confirmed Chapter 11 plan which discharged tax penalty claims of the county, may properly receive a distribution in lieu of a payment to the county of its claim for a tax penalty without violating the rule of absolute priority.

For these reasons, the objection of the trustee to the penalty portion of the claim of Prince George's County, Maryland will be SUSTAINED, and the said penalty will be discharged.

ORDER ACCORDINGLY.